DECISION
This matter is before the court for decision following trial, held in the courtroom of the Oregon Tax Court June 17, 2009. The tax year at issue is 2006. Plaintiff appeared and testified on her own behalf. Defendant was represented by Leah Kimsey, Tax Auditor, Oregon Department of Revenue, and David Armstrong, Senior Tax Auditor, Oregon Department of Revenue.
 I. STATEMENT OF FACTS
Based on the testimony and exhibits admitted at trial, the court finds the following facts.
Plaintiff timely filed her 2006 state income tax return (Form 40), with a filing status of head of household. (Ptf s Compl, Ex 1 at 8.) That return reported a federal adjusted gross income of $30,516, Schedule A itemized deductions of $10,959, child and dependent care expenses of $4,500 (from a federal Form 2441 and an Oregon Schedule WFC), and a $46 earned income credit (EIC). (Ptf s Compl, Ex 1 at 8, 3, 4, 10, 9.) The $4,500 child care expenses generated a $1,800 Oregon working family credit (WFC), and a $675 child and dependent care credit (CDC). (Ptf s Compl, Ex 1, at 9, 10.)
Plaintiffs Schedule A included $2,889 in charitable contributions made in cash, $1,655 of unreimbursed employee expenses, and $6,025 of "Other Expenses." (Ptf s Compl, Ex 1 at 3, 7.) Plaintiffs Oregon return claimed a refund of $1,622. (Ptf s Compl, Ex 1 at 9.) *Page 2 
Defendant pulled Plaintiffs 2006 Oregon return for review in processing and, on March 20, 2007, Defendant sent Plaintiff a request for information regarding her reported child care expenses supporting the two child care credits (WFC and CDC). (Ptf s Compl, Ex 2.) On or about April 3, 2007, Plaintiff responded with some of the information requested by submitting receipts for child care expenses. (Ptf s Compl, Ex 3, 4.) Plaintiff included a letter she wrote, dated April 3, 2007, indicating that Nina Kolombet (Kolombet) worked as an after school "babysitter" for Plaintiff s two children, a 9-year-old son and a 5-year-old daughter, four hours per day, from 4 to 8:00 p.m. (Ex 3 at 2.) According to that letter, Kolombet provided child care services for six months in calendar year 2006, beginning sometime in April, and ending on October 1, 2006. (Id.) Plaintiff submitted copies of the receipts and the letter with her Complaint.
Plaintiffs trial exhibits include copies of the receipts, copies of monthly calendars for April through September showing the date and time Kolombet allegedly cared for Plaintiffs children, and a notarized affidavit signed by Kolombet. (Ptf s Trial Exs 3, 4, 5.) According to the receipts, Plaintiff paid Kolombet $800 in the months of May through September, and $500 in October. (Ptf s Trial Ex 4 at 1-6; Ex 5 at 1, 2.) Kolombet's notarized affidavit states that she was a babysitter for Plaintiffs two children "approximately 4 hours a day (after school) while Mrs. Kudina was out for work. The $4,500 was the total amount that I was accepted in `cash' for the babysitting services." (Ptf s Trial Ex 3 at 1.)
Defendant issued a Notice of Deficiency on August 10, 2007, disallowing Plaintiffs $4,500 reported child care expenses, resulting in the denial of the CDC and the WFC. (Ptf s Compl, Ex 5 at 2.) The deficiency resulted in a tax to pay of $853, plus interest, after allowance of the $46 EIC, rather than the $1,622 refund Plaintiff had reported. (Id. at 1.) Plaintiff filed a written objection, dated August 29, 2007, with Defendant. (Ptf s Compl, Ex 7.) Plaintiff *Page 3 
included a sworn and notarized affidavit of Kolombet in support of her claimed child care expenses. (Ptf s Compl, Ex 6.) According to that affidavit, Kolombet cared for Plaintiffs two children for approximately six months between April and October 2006, four hours per day, receiving a total of $4,500 in cash. (Id.)
Subsequently, on October 23, 2007, Defendant issued a Notice of Deficiency Assessment assessing the $853.00 deficiency, plus a penalty of five percent ($42.65), and interest (as of that date) in the amount of $39.79. (Ptf s Compl, Ex 8.) That assessment was based on Defendant's conclusion that Plaintiff failed to adequately prove that she paid the child care expenses. (Id. at 2.) That conclusion was based, at least in part, on Defendant's determination that Plaintiffs receipts were not contemporaneous. (Id.)
Plaintiff filed a Complaint with this court, January 15, 2008, challenging Defendant's assessment. Defendant filed an Answer, February 14, 2008, explaining why the credits were denied and asking the court to uphold the assessment. In its Answer, Defendant also requested that Plaintiff provide additional information concerning not only the child care expenses, but other items claimed on Plaintiffs Schedule A (e.g., business expenses, education expenses, and charitable contributions). Defendant further requested information on Plaintiffs marital status, which relates not only to Plaintiffs entitlement to the credits, but also her filing status (head of household versus married filing separate).
On November 17, 2008, Plaintiff submitted to the court a 2006 Oregon amended return claiming federal AGI of $32,016, itemized deductions from Schedule A in the amount of $12,019, which include $2,500 in charitable contributions, $6,330 in unreimbursed employee expenses, and $3,829 in "other expenses." That return claims a $360 CDC, and $1,800 WFC, and a $46 EIC, and was resubmitted to the court on June 3, 2009, as part of Plaintiff s trial *Page 4 
exhibits. (Ptf s Trial Ex 21.) That return claims a lesser refund of $1,271 (compared to the original refund claim of $1,622). (Id. at 3.)
After several case management conferences and rulings by the court on various motions, Defendant submitted a Recommendation, filed with the court February 24, 2009, requesting that the court uphold the deficiency and find an additional deficiency of $1,146, plus statutory penalty and interest. As a result, Defendant is requesting that the court uphold the denial of the CDC and the WFC in the amounts of $360 and $1,800, respectively; deny Plaintiffs Schedule A itemized deductions; and change Plaintiffs filing status from head of household to married filing separately. A change in Plaintiffs filing status to married filing separate would preclude Plaintiff from claiming the EIC of $46.
During the course of the June 17, 2009, trial, Defendant modified its position, requesting that the court allow: (1) Plaintiffs amended charitable contributions in the amount of $2,500, (2) certain unreimbursed employee business expenses as set forth in Plaintiffs Exhibit 20, totaling $1,714 (rounded), and (3) Plaintiffs unreimbursed employee business expenses associated with two required training's Plaintiff participated in, one in New Orleans costing Plaintiff $1,367 and another Internet-based training that cost Plaintiff $480. Defendant has requested that the court change Plaintiffs filing status from head of household to married filing separate, deny the three credits (CDC, WFC, and EIC), and disallow the other claimed expenses.
 II. ANALYSIS
A. Burden of Proof and Adequate Substantiation
This case involves certain credits and deductions Plaintiff claimed on her 2006 Oregon return, including her filing status.
The court begins with the observation that it is the express intent of this state's legislature to "[m]ake the Oregon personal income tax law identical in effect to the provisions of the *Page 5 
Internal Revenue Code." ORS 316.007.[1] As a result, the legislature adopted, by reference, the federal definitions for credits and deductions, including filing status. Credits and deductions are a "matter of legislative grace" and the burden of proof (substantiation) is placed on the individual claiming the deduction. INDOPCO, Inc. v. Comm'r,503 US 79, 84, 112 S Ct 1039, 117 L Ed 2d 226 (1992); New Colonial IceCo. v. Helvering, 292 US 435, 440, 54 S Ct 788, 78 L Ed 1348 (1934);Hansen v. Dept. of Rev., TC-MD No 081122D, WL 3089297 *6 (Sept. 29, 2009); Tindall v. Dept. of Rev., TC-MD 080694B, WL 1058655 *2 (Apr. 17, 2009).
During the audit examination stage, taxpayers must stand ready to produce "any books, papers, records or memoranda bearing upon [any] matter required to be included in the return[.]" ORS 314.425(1). When, as in this case, the dispute moves to the Tax Court, the party seeking affirmative relief bears the burden of proof and must establish his or her case by a "preponderance" of the evidence. ORS 305.427. The burden in this case falls, at least initially, on the Plaintiff, as she is the party seeking affirmative relief. This court has previously ruled that "[p]reponderance of the evidence means the greater weight of evidence, the more convincing evidence." Feves v. Dept. of Revenue, 4 OTR 302, 312
(1971). Evidence that is inconclusive or unpersuasive is insufficient to sustain the burden of proof. Reed v. Dept. of Rev., 310 Or 260, 265,798 P2d 235 (1990). Finally, in an income tax appeal, this court has the statutorily authority to determine the correct amount of the deficiency (i.e., tax), "even if the amount so determined is greater or less than the amount of the assessment determined by the Department of Revenue[.]" ORS 305.575.
With these principles in mind, the court turns to the particular matters in dispute. *Page 6 
B. Filing Status
Among the benefits available to taxpayers with children is the head of household filing status. Plaintiff has claimed "head of household" filing status, and Defendant insists she does not qualify for that status but, rather, must be changed to "married filing separate."
For purposes of this case, Internal Revenue Code (IRC)[2] section 2(b)(1) defines "head of a household" as an "individual [who] is not married at the close of the taxable year[.]" See also Treas. Reg. §1.2-2(b) (limiting "head of household" filing status to individuals not married at the close of the taxable year). For calendar year taxpayers, the close of the tax year is December 31. Plaintiff is a calendar year taxpayer and she was legally married on December 31, 2006.
IRC section 2(b)(2)(A) provides that "an individual who is legally
separated from his spouse under a decree of divorce or of separate maintenance shall not be considered as married[.]" (Emphasis added.) Plaintiff testified that she and her former husband "separated" in January 2005 and, at the time of trial in 2009, they had been granted a legal divorce. However, there is no evidence that Plaintiff and her now-former husband were "legally separated * * * under a decree of * * * separate maintenance" in 2006. Physical separation is not sufficient under the code. Accordingly, the court finds that Plaintiff does not meet the legal requirements for head of household filing status. Plaintiff's filing status is therefore changed to married filing separate.
C. Earned Income Credit
ORS 315.266(1) provides Oregon residents a credit "equal to five percent of the earned income credit allowable to the individual for the same tax year under section 32 of the Internal *Page 7 
Revenue Code." The IRC section 32 credit is available to eligible individuals against the tax imposed for the year based on a percentage of the taxpayer's earned income. IRC § 32 (a)(1). The credit is not available to married individuals unless they file a joint return, or the taxpayer claiming the credit is considered not married under IRC section7703. IRC § 32 (d).[3] Plaintiff did not file a joint return in 2006, but contends she qualifies as not married because she and her husband did not live together in 2006.
IRC section 7703 (b) provides that certain individuals living apart are not considered married for purposes of those provisions that refer to section 7703 (including IRC § 32 (d)). To qualify, the married individual must file a separate return, furnish over one-half of the cost of maintaining the household, and, as relevant here, "during the last 6 months of the taxable year, such individual's spouse [must] not [be] a member of such household." IRC § 7703 (b)(3).
Plaintiff testified that she did not live with her husband at any time during 2006. In support of that claim, Plaintiff submitted her Oregon driver license issued September 7, 2006, reflecting a SE Stark Street address in Portland, Oregon. Also submitted was a sworn declaration from her husband John Harper (Harper), stating that he resided at 200 Lakeview Drive, Ilwaco, Washington, for all 12 months of 2006, along with certain bills for electric, sewer, and water at the Ilwaco, Washington address. (Ptf s Tr Ex 6, 2.)
Defendant challenges Plaintiffs claim that she lived apart from her husband in 2006. In support of that contention, Defendant submitted information it found as a matter of public record regarding a lawsuit Plaintiff and her husband Harper filed in the Superior Court of the State of Washington against a real estate company that allegedly sold a lot to another party that plaintiffs *Page 8 
in that matter (Kudina and Harper), had already committed to buying, including payment of earnest money. (Def's Ex G.) On August 17, 2006, Plaintiffs filed with the Superior Court of the State of Washington a "First Amended Complaint Unfair Practice RCW 49.60.225." (Def's Ex G at 1, 9.) In that document, Plaintiff and her husband identify themselves as a "couple with three children ages: 5, 9, and 15, residents of Portland,Oregon." (Id. at 1.) (Emphasis added.) According to that complaint, Plaintiff and her husband were attempting to purchase a lot in Vancouver, Washington "so they could build their family's `dream' house." (Id. at 1, 3.)
On October 16, 2006, Plaintiff and her husband Harper filed a "Notice of Removal" with the United States District Court, District of Oregon, based, in part, on a claim of diversity jurisdiction because the civil lawsuit involved a "a controversy between citizens of two different states." (Id. at 30, 31.) In support of that diversity of citizenship claim, Plaintiff and her husband stated that "[a]t the time the Summons and Complaint were served, the plaintiffs were Oregon citizens and Pyramid Homes Inc. and Coldwell Banker were incorporated and had principal place of business in the Washington State." (Id. at 31.)
Furthermore, in their August 17, 2006, Amended Complaint in that federal action, the plaintiffs (Kudina and Harper) indicate that Harper "is a General Contractor who builds houses in Long Beach, Washington." (Id. at 4.) There is little information about Harper's Washington residence. The court notes that Ilwaco is not far from the town of Long Beach, Washington. It is possible that Harper rented a room or had an apartment in Washington where he stayed at times during the week while building in Long Beach.
Harper did not testify for Plaintiff in this tax appeal. As Defendant notes, Plaintiff and her husband Harper have taken inconsistent positions in two court proceedings, filing a declaration with this court stating Harper lived in Washington in all of 2006, and claiming in the *Page 9 
civil lawsuit that Plaintiff and Harper initiated in Washington that they were a couple residing in Oregon. Accordingly, Plaintiff's claim in this court that she and her now former husband Harper did not live in the same household for last six months of 2006 is not credible, and Plaintiff is therefore not entitled to the earned income credit.
D. Child and Dependant Care Credit
ORS 316.078 provides for a nonrefundable credit for certain employment-related expenses, including child care, paid by a taxpayer for the care of a dependent child or children. That credit is referred to as the child and dependent care credit. That credit is specifically tied to IRC section 21, which requires, among other things, that married taxpayers file a joint return. IRC § 21(e)(2).
There are certain statutory exceptions for married individuals who, under the code, are deemed not married for purposes of the credit. One is where the taxpayer claiming the credit is "legally separated from h[er] spouse under a decree of * * * separate maintenance." IRC § 21(e)(3). The court has already concluded that there is no persuasive evidence in this case that Plaintiff was "legally separated." Another exception involves married individuals living apart if "during the last 6 months of such taxable year [the taxpayer's] spouse is not a member of [the taxpayer's] household[.]" IRC § 21(e)(4)(B). Again, the court has already found Plaintiff's claim that her husband was not a member of her household during the last six months of 2006 to be unpersuasive. As such, Plaintiff is not entitled to the Oregon child and dependent care credit.
E. Working Family Child Care Credit
ORS 315.262(2) provides a credit for qualifying child care expenses "equal to the applicable percentage of the qualified taxpayer's child care expenses (rounded to the nearest $50)." To qualify for the credit, the taxpayer must file a joint return; be legally separated and file *Page 10 
a separate return; or reside in a separate household from her spouse "on the last day of the tax year with the intent of remaining in separate households in the future." ORS 315.262(5)(d).
Additionally, the court must be persuaded that the child care expenses claimed were actually incurred. Plaintiff has claimed $4,500 in child care expenses in 2006, generating a working family credit of $1,800. The child care payments were reportedly made in cash. Plaintiff spent very little time testifying about the nature of her work or her necessary work-related child care expenses. Plaintiff and her husband operated a nonprofit organization in Washington. Depending on the documentary evidence presented, Kolombet cared for Plaintiff's children between 4:00 PM and 8:00 p.m., or 3:30 p.m. and 7:30 p.m. There is no testimony or other evidence as to the number of hours Plaintiff worked each week (or day), or when her workday began and ended.
The court finds the evidence unpersuasive. In cases such as this, the sworn testimony of the child care provider is extremely important. SeeBello v. Dept. of Rev., TC-MD No 060020B, WL 1460903 (May 8, 2007); Marksv. Dept. of Rev., TC-MD No 070124E, WL 1452000 (May 11, 2007);Rodriguez-Avalos v. Dept. of Rev., TC-MD No 050651C, WL 2614534 (Oct 12, 2005). Also critical is the candor and credibility of all witnesses. The court was not presented with Kolombet's testimony, and Plaintiff was not a credible witness. Accordingly, proof of the claimed child care expenses is lacking and Plaintiff is not entitled to the Oregon working family credit.
F. Schedule A Itemized Deductions
1. Charitable Contributions
Included in Plaintiff's amended Schedule A is $2,500 in charitable contributions made in cash. (Ptf's Trial Ex 21 at 8.) The contributions were to National Youth Support Development, Corp. (Nat'l Youth Support), a nonprofit organization in Vancouver, WA. *Page 11 
Plaintiff is the Executive Director of that organization. Plaintiff submitted an acknowledgment letter over the signature of Natalie Les, Administrative Director for Nat'l Youth Support, confirming the $2,500 contribution, along with her December 2006 pay stub reflecting year-to-date charitable withholdings in the amount of $2,500. (Ptf's Trial Ex 10 at 1; Ptf's Ex 10 at 1, 2, June 3, 2009.) At trial, Defendant agreed Plaintiff was entitled to an IRC section 170 charitable contribution deduction in the amount of $2,500. The court accepts the parties' agreement.
2. Unreimbursed Employee Expenses
IRC section 162(a) provides in relevant part that "[t]here shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business * * *." Such expenses include expenses for the business use of a car or truck (i.e., mileage incurred for work purposes). See IRC § 162(a)(2). For a deduction to be allowed as a business expense, it must be both "ordinary" and "necessary" to a taxpayer's trade or business. IRC § 162(a).
"To be `necessary[,]' an expense must be `appropriate and helpful' to the taxpayer's business. * * * To be `ordinary[,]' the transaction which gives rise to the expense must be of a common or frequent occurrence in the type of business involved." Boyd v. Comm'r, 83 TCM (CCH) 1253, 2002 WL 236685 at * 2 (internal citations omitted). The Oregon Tax Court has stated that "* * * an ordinary expense is one which is customary or usual. This does not mean customary or usual within the taxpayer's experience but rather in the experience of a particular trade, industry or community." Roelli v. Dept. of Rev., 10 OTR 256, 258 (1986) (citingWelch v. Helvering, 290 US 111, 54 S Ct 8, 78 L Ed 212 (1933)); Guinn v.Dept. of Rev., TC-MD No 040472D, 2005 WL 1089727 at * 4 (Apr 19, 2005) (citing Roelli, 10 OTR at 258). *Page 12 
Under IRC section 274(d)(4), such expenses must be substantiated "by adequate records or by sufficient evidence corroborating the taxpayer's own statement[.]" Even if an expense is otherwise deductible, the deduction may be denied if the substantiation to support the expense is insufficient. See Temp Treas Reg § 1.274-5T(a)(4) (as amended in 2003). Generally, the taxpayer is required to substantiate the expense amount, date and time, the business purpose, and the business relationship of the persons receiving gifts or entertainment. See IRC § 274(d).
Plaintiff has claimed $10,159 in job and other miscellaneous expenses. According to Plaintiffs amended Schedule A, that amount consists of $6,330 of unreimbursed employee expenses (job travel and education), $1,805 in job related continuing education, and $2,024 of other expenses (office supplies). (Ptf s Trial Ex 21 at 8.)
Plaintiff testified her job requires that she travel to attend conferences and fund-raising events. According to a document Plaintiff submitted into evidence, Nat'l Youth Support received a federal grant that required, among other things, that the organization send "two key personal [sic] to the annual LITC[4] Conference, scheduled for December 4, 2006, at Marriott, New Orleans." (Ptf s Trial Ex 9 at 1.) Plaintiff testified that she attended the conference in New Orleans and she submitted evidence of the costs associated with air fare, lodging, and certain travel and meal expenses. (Ptf s Trial Ex 13 at 1-6.) Although the evidence is difficult to decipher, it appears that Plaintiffs reported costs for that trip total $1,427.[5] (Id.) Defendant agreed at trial that Plaintiff was entitled to deduct the costs associated with that trip. The court accepts the parties' agreement and will allow the deduction.
Plaintiff testified that she attended two other conferences in 2006. One was an Internet-based training course that cost $480. Plaintiff submitted a page from her credit card statement *Page 13 
reflecting the $480 charge for the program. (Ptf s Trial Ex 15 at 2.) Plaintiff testified that the training was an online course on how to use Peachtree accounting software. Defendant has agreed Plaintiff is entitled to deduct that expense. Again, the court will accept Defendant's recommendation to allow the expense as a Schedule A unreimbursed employee expense deduction.
The other conference Plaintiff reports attending was a two day conference in Seattle called the "National Mentors of Young Leaders Workshop." (Ptf s Trial Ex 19.) Plaintiff testified that the cost of the conference was $1,325. Plaintiffs credit card statement confirms that expenditure. (Ptf s Trial Ex 15 at 1.) Plaintiff also submitted the program schedule for that conference. (Ptf s Trial Ex 19.) The conference appears to the court to be related to Plaintiffs business. Defendant questioned the validity of the deduction, apparently concerned about why Plaintiff paid and was not reimbursed. A letter from the company's financial manager states that the corporation "had not reimbursed Mrs. Kudina for 2006 out-pocket office and other mandatory travel expenses; not in 2006 or at the later time due to the unavailability of funding for the overhead expenses." (Ptf s Trial Ex 20 at 1.) Additional reported costs associated with that conference were 680 miles round-trip automobile transportation which, at the 2006 travel reimbursement rate of 45.5 cents per mile, amounts to a deduction of $303. There is no information in evidence regarding any other costs associated with the conference. The court accepts the conference as unreimbursed business expenses totaling $1,628.
Plaintiff testified that she incurred several thousand dollars of unreimbursed employee expenses consisting of advertising, office equipment, and supplies. Not all those items are substantiated, and the evidence is conflicting, as it appears as though some items are reported in several places. Plaintiff submitted a letter by Nat'l Youth Support's financial manager Yelena *Page 14 
Zapolskiy stating that Plaintiff was not reimbursed for certain business-related expenses. (Ptf s Ex 20 at 1, June 3, 2009.) Attached to the letter is a table of inventory items Plaintiff reportedly purchased and donated to the organization totaling $1,714 (rounded). (Id. at 2.) The court will accept those expenses.
The court is denying the remainder of Plaintiff s unreimbursed employee business expenses for lack of adequate substantiation. Included in the amounts disallowed are $401.00 for professional subscriptions, and $620.00 in advertising. (Ptf s Trial Ex 21 at 9, 10.) Although Plaintiff has information tending to substantiate the acquisition of the items, there is no persuasive corroborative evidence that Plaintiff herself paid for the items and was not reimbursed.
Another item disallowed by the court is Plaintiffs reported vehicle related travel expenses, which come to 4,173 miles. (Ptf s Trial Ex 11.) Although Plaintiff has a log that she testified was created, not by her, but by the organization's assistant manager, that individual did not appear and testify at trial and the log lacks sufficient detail. For use of an automobile, the taxpayer must substantiate the following elements: (i) the amount of the business use (a ratio of business use to total use of the automobile for a period of time), (ii) the date of the use, and (iii) the business purpose of the use. Temp Treas Reg § 1.274-5T(b)(2). The adequate records requirement may be satisfied by documentary evidence in combination with trip sheets, logs, a diary, or other records prepared at or near the time of the use. Temp Treas Reg § 1.274-5T(c)(2). Although a contemporaneous log is not required, "corroborative evidence * * * must have a high degree of probative value to elevate such statement and evidence to the level of credibility [of a contemporaneous record]." Temp Treas Reg § 1.274-5T(c)(1) (as amended in 2003); see Daiz v. Comm`r, 84 TCM (CCH) 148, 2002 WL 1796832 at *6. The court's two primary concerns with Plaintiffs mileage log are that the destination is too generic (e.g., "client meeting," "outreach *Page 15 
activities"), and that the starting location reported in the log is always reported as "Home Office," whereas Plaintiff testified that she did not work from a home office, but rather worked from the organization's Vancouver office location. (Ptf's Trial Ex 11.)
 III. CONCLUSION
For the reasons set forth above, the court concludes that:
(1) Plaintiff's filing status must be changed from head of household to married filing separate because Plaintiff was married in 2006 and does not qualify for the IRC section 2(b)(2)(A) exception applicable to individuals "legally separated * * * under a decree of divorce or of separate maintenance;"
(2) Plaintiff is not entitled to the earned income credit because the court is not persuaded that Plaintiff and her husband lived in separate households for the last six months of 2006;
(3) Plaintiff is not entitled to the Oregon child and dependent care credit because she was legally married, not legally separated, and did not persuade the court that her spouse was not part of her household for the last six months of 2006;
(4) Plaintiff is not entitled to the Oregon working family credit because she failed to persuade the court she actually incurred the reported child care expenses in order to enable her to work;
(5) Plaintiff is allowed $7,749 in certain disputed Schedule A deductions consisting of $2,500 of charitable contributions (made in cash); $3,535 for the costs associated with two conferences Plaintiff attended and one Internet-based training Plaintiff took; and $1,714 for unreimbursed office equipment and supplies Plaintiff purchased for the organization.
Now, therefore,
IT IS THE DECISION OF THIS COURT that Plaintiff's appeal is granted in part and denied in part as set forth above; *Page 16 
IT IS FURTHER DECIDED that Defendant shall recalculate Plaintiff's 2006 tax liability to conform with the court's determinations as set forth above.
Dated this ___ day of October 2009.
If you want to appeal this Decision, file a Complaint in the RegularDivision of the Oregon Tax Court, by mailing to: 1163 State Street,Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 StateStreet, Salem, OR.
 Your Complaint must be submitted within 60 days after the date of theDecision or this Decision becomes final and cannot be changed.
 This document was signed by Magistrate Dan Robinson on November 17,2009. The Court filed and entered this document on November 17, 2009.
[1] Unless noted otherwise, all references to the Oregon Revised Statutes (ORS) are to 2005.
[2] Unless otherwise noted, all references to the Internal Revenue Code (IRC) are to 2006.
[3] IRC section 32 (d) provides: "[i]n the case of an individual who is married (within the meaning of section 7703), this section shall apply only if a joint return is filed for the taxable year under section 6013."
[4] According to the grant approval letter, LITC stands for Low Income Taxpayer.
[5] That amount is comprised of $586.07 for lodging, $621.40 for travel (round-trip airfare), and $219.95 for substantiated transportation (taxi rides to and from the airport) and meals. *Page 1